Ladies and gentlemen, we have two cases on the call this morning, the time we've allotted for oral argument. Fifteen minutes for the Appellant, fifteen minutes for the Appellee, five minutes in rebuttal. I don't use the timing lights, but I'll bolt you to the time, so watch your own time.  Case No. 9194, Old People v. Dante Brown Good morning, Your Honors. May it please the Court, I'm Jennifer Bontrager and I represent Dante Brown. This case is about a mentally retarded young man with an IQ of 64 and a mental age between 5 and 9 years old, who is incapable of abstract thinking and who does not understand the words or concepts embodied in his Miranda Rites. This morning I hope to talk both about how Dante did not understand what his Miranda Rites meant, much less the consequences of waiving them, and also about how shocking it is that a young man, made mentally much younger by his mental retardation, and who is guilty only by accountability, nevertheless faces spending the rest of his natural life in prison. Regarding Dante's confession, even after a year in the Cook County Jail, Dante had an IQ of 64. He was unable to read or write anything more than his own name. He was incapable of abstract thinking, rendering him the mental equivalent of a child between 5 and 9 years old. Miranda warnings are coded to the vocabulary and understanding of an average 12 to 13 year old. This is well above Dante's abilities. A valid Miranda waiver requires an understanding both of the nature of the rites and of the consequences of abandoning those rites. And the record here shows that no valid waiver occurred in this case. Dante suffers from deficits at all levels of information processing. He cannot read. He has the vocabulary of a 6 year old child. When hearing words or concepts that he does not understand, he codes them down to his level into something he can understand, which generally results in gross misunderstandings about what is being communicated to him. What did Dr. Gwarden say about all of this? I'm sorry? What did Dr. Gwarden say? Oh yes, Dr. Cowardin? Yeah. Well, all of the information that I've just been talking about was exactly what Dr. Cowardin was testifying about. Did she give an opinion on whether he could understand Miranda rights? She said... Or was she unable to? I'm sorry? Or was she unable to opine on that subject? She said she could not say exactly whether, say for certain, whether Dante understood Miranda at the time he waived it because she was unable to conduct a contemporaneous examination of him. She did say that she doubted very much that he could understand the rights or the consequences of waiving them, given that he could not understand the vocabulary of Miranda. He could not understand the concepts that Miranda involves, the rights, waiving those rights. He could not even complete a test designed to determine whether he understood Miranda. What did she write in her report about his ability to understand Miranda rights? She said that he did both. I don't know that she necessarily had a conclusion exactly about that. He demonstrated a reliably good understanding of basic Miranda rights?  There was a portion of the Grisso test for Miranda involving discussing pictures of individuals interacting with police and at a police station. He did well in that portion of the test. He failed two other portions of the test and was unable to complete the final portion of the test because he could not read, and his attention deficit disorders prevented him from, as I believe she phrased it, holding the concept in his head for long enough to be able to say whether he understood comparison between two different phrases involving Miranda rights. But the doctor was also careful to explain that his ability to identify those pictures and discuss Miranda in the context of those photographs did not mean that he understood the rights. That was illustrating that he does have good nonverbal skills and community skills, that he's very good at masking his disabilities, that he will answer questions yes generally, even if he doesn't actually understand the question and even if yes is not the appropriate answer. The doctor was unaware of his prior criminal history though, which would have involved the giving of Miranda rights and prior occasions. She was aware that he had some criminal history. She was unaware of the details of it. The fact of his criminal history, the record does not indicate whether he was ever read his Miranda rights before, whether he had ever been interrogated before, and the offenses and dispositions themselves, he was, in particular in his juvenile adjudications, he was given probation and every time those were terminated unsatisfactorily, which suggests, as opposed to him gaining some sort of understanding of Miranda through his experience in the system, that he didn't understand even how the system worked. He's unable to comply with the terms of his juvenile probation. And Dr. Cowardin also said that simply repeating something over and over to an individual, if the individual does not understand the words and concepts involved in what you're repeating, repetition does not impart understanding. The trial court had the videotaped statement in which he acknowledged that he had been previously given Miranda warnings. Correct. He was given those warnings on the tape and then waived his rights. And the videotape shows him answering all questions posed to him by the state's attorney with little hesitation. It seemed to give an accurate and full depiction of what happened at the time of the incident. Yes, well, regarding giving him the Miranda warnings, again repeating the Miranda warnings to him that day does not necessarily mean he understood them. The video shows that he answers yes very quickly to each question. But there were more than yes answers. There were very complete descriptions, descriptive answers given to those questions. In the narrative portion of it, yes. But regarding his rights, he very quickly answered yes. He didn't ask for any clarification. And the state's attorney didn't do anything to ensure that he actually understood them. As far as the rest of the statement goes, he is able to tell a coherent narrative. He does answer the questions properly. That doesn't necessarily show that he understood the consequences of that Miranda waiver. This court held in Daniels that a linear narrative in an interview does not show that an individual is not mentally retarded or that an individual understands that he or she understood his Miranda rights and then understanding the consequences of waiving them did so. That he tells a linear narrative, again, is simply not just positive. If I may turn to sentencing, this court should not ignore the reality that upon entering the Department of Corrections at the age of 19, Dante will never become eligible for parole. Even though he did not kill or intend to kill the victims in this case, and even though he cannot read or write anything more than his own name because of his mental retardation. In Graham v. Florida, the United States Supreme Court held that when an individual faces the most serious punishment available, the sentencing judge must consider not only the circumstances of the crime, but also the individual characteristics of the defendant himself. In other words, Graham rejected a one-size-fits-all approach when an individual is facing the most severe penalties available in a state. Under that analysis, the mandatory natural life sentencing as applied to Dante is unconstitutional because it prohibited the sentencing judge from considering any of Dante's characteristics, namely his mental retardation, making him much younger than his physical 19. May I interrupt you just for a moment? Certainly. You are, are you not asking us to evaluate this sentence under the categorical analysis of Graham? Yes, in this as applied, I'm making an as applied challenge, but nevertheless using the categories. You are making an as applied? Yes, as applied to Dante. I've argued that as applied to him, the mandatory natural life sentencing is unconstitutional. The Supreme Court's opinion in Graham opened the doors to using the categories previously reserved for death penalty only cases into non-death penalty cases. So it is appropriate, and in fact, justice requires that when an individual is facing the most serious penalty available, the judge consider the individual's characteristics, including those categories that have been carved out as special or particular in regard to sentencing previously in capital cases. And then Graham opened it up, finding life without parole inappropriate for a juvenile offender. And though Dante was physically 19, he is certainly, he is, according to the expert in this case, he is mentally a child between five and nine years old. And so prohibiting the judge from applying the mandatory natural life sentence to Dante simply does not fit Dante or his crime. And I would ask that this court either reduce the sentence to a term of years reflecting Dante's characteristics or remand for a new sentencing hearing. Counsel, thank you. State. Thank you. May it please the court. My name is Marie Quinlivan-Chek, and I represent the people of the state of Illinois. Dante Brown proved, established repeatedly that he was fully aware of the Miranda warnings. The inquiry here is whether he understood that he had the right to remain silent and ask for a lawyer and whether he understood that the statement that he gave could be used against him. In the videotaped statement, he repeatedly states that, yes, he understands those rights. He then gave a coherent narrative. He was responsive to the questions. Why did the state's attorney not give further instruction to be sure that he understood? Because there is absolutely no indication that he did not understand. Everything about his demeanor said, I understand what's going on. When we look at the defendant's own witness, his own expert, Dr. Cowardin, again, the test revealed that he understood what was going on. In one portion of the Griswold test, determining what the Miranda warnings, his comprehensive Miranda warnings, he did very well, according to Dr. Cowardin, on page BBB 53 to 54. On the nature of the interrogation, 100 percent. On the meaning of the right to silence, 100 percent. On the right to the function of counsel, the right to counsel, 80 percent. On the function of interrogation, 93.3 percent. He had been through the system before. This was his tenth arrest, counting his juvenile arrests. He had been through the system before. He was well acquainted with Miranda rights and the consequences of giving a statement. He knew from that prior experience. In fact, he initiated the statement. He had been arrested for another crime, certainly for the burglary and the theft of a service revolver. He was scheduled for a lineup. He was also under arrest for, or I think a suspect, for an armed robbery. While standing in line for the lineup, he approaches the detective and says, can I tell you something? He is the one who begins this all. He knows that if he has information on another crime, he's experienced enough to know that if he has information on another crime, that in itself will be enough to lighten his sentence here. That's why he initiates this, because he is so very experienced. As this court pointed out, Dr. Cowardin was unaware of his prior record. She said those arrests that's extensive, had she known about that, she would have wanted to look into that. She would have wanted to know what he would have learned from that, what he had known about that. The bottom line is, she did not know about his extensive history. Nor could she definitively say that he did not understand his Miranda warnings. How could she, in light of these findings? You know, 100% on some of the tests of his understanding of Miranda warnings. He was well acquainted with what a Miranda meant. His own witness could not say that he was not. She couldn't even say definitively that he was mentally retarded. I'm aware that an IQ of 64 is below the line, shows mental retardation. But what about his cognitive reasoning? What about his nonverbal reasoning? 83. Again, she says, yes, this is well below normal, but this is not in the mentally retarded range. Because of the wide variation, the verbal being 54, the nonverbal being 52, the nonverbal being 84, there's such a wide swing here. I don't really know what to do with him. I would have to look at this. If he was in the schools, we would have to look at this. In fact, in the schools, they vacillated between treating him as learning disabled, which is, by definition, a person of average intelligence, normal intelligence, and EMH, educally mentally handicapped, mildly retarded. She said, they didn't know what to do with him. I don't know what to do with him. He does not display himself, even according to their own witness, as being definitively mentally retarded. So the bottom line is, I think there is no concern here about whether or not he intelligently waived his rights. He understood the Miranda rights. He understood that if he gave a statement, it could be used against him. He understood he had the right to remain silent. He understood he had the right to have counsel if he chose. He waived that knowingly and intelligently. What about the defendant's argument that the trial court may have shifted the burden improperly? The trial court did state the wrong burden. At the outset of his finding, he said, the burden is on the defendant. The burden is not on the defendant. The burden is on the state. The point is, though, with or without the burden, no matter what the burden is, because the evidence was there under any burden, under anyone's burden, the evidence was there to show that the defendant knowingly and intelligently waived his rights. The trial court was mistaken. There's no getting around it. But is that plain error? No, because the evidence here is so strong. Is that what the trial court was doing, or was it addressing the fact that the burden does shift to the defendant? Your Honor, my reading is at the very beginning, the outset of his findings, he said, the burden is on the defendant. That's my only reading of it. I would love to take your interpretation. I'm not sure. Okay. Thank you, counsel. But the bottom line is, no matter what the burden was, because the trial court looked at the video statement, and there's no question that he did, he said twice, that he looked at the videotaped confession, because he looked at that, because the defense counsel or the defense witness did not have anything definitive to say, no matter whose burden it was, the evidence was there to sustain the finding that the defendant intelligently waived his Miranda rights. As for the sentencing issue, counsel is asking this court to ignore the law that is well-established in Illinois, that if you commit a double homicide and you are an adult, the sentence is natural life. The legislature has been clear, the Illinois Supreme Court has been clear, that there are no set of mitigating circumstances that could allow a proper penalty of less than natural life for the crimes of two or more murders. Hubel v. Taylor. There's just no question. That law is well settled. The defendant is not a juvenile. He'd like to pretend he's a juvenile. He's 19. 19 is an adult. 18 would have been an adult. If this court is to engage in some analysis about what his mental age might have been, it will open the door well beyond anything that the legislature said. The bottom line is there's double homicide in Illinois, natural life beginning and end of the conversation. This is not a rote recitation. This is the law. The case the defendant relies on, Graham v. Florida, was a case where the defendant was a juvenile. Our defendant is not a juvenile. Also, oh, he did not commit murder. He committed armed burglary and attempt armed robbery. Those are the two crimes. He was originally given probation, and when he didn't follow through on the probation, it went from probation to natural life. It's not what we have here. Here we have a double homicide committed in very cold, very premeditated ways. The defendant was not suddenly caught unaware. He was not standing in a street corner, handed a gun, or said, you know, come with us. No, he didn't have a gun. I didn't mean to say that. But it was not a last minute thing. He knew. He was in the car, checked the gun on the way, made sure it was loaded. He knew what was going on. There's not some accident here. It was part of this double homicide, natural life. That's the law. Can you understand what, do you understand from the briefs whether this was a categorical challenge to the sentencing? Your Honor, if it's a categorical challenge, that makes absolutely no sense because the defendant is not a juvenile. What category does he fall into that would exclude him from natural life? It appeared that the defendant was making an argument that we should find a new category that would make this type of sentence unconstitutional. I think their argument was they were trying to piece together categories. From different cases? Right. The categories that, oh, juveniles are not sentenced to death. And, oh, the category that somebody is mentally retarded is not sentenced to death. And from the grain case, you know, that a juvenile not sentenced with a homicide is not sentenced to death. Trying to piece together existing categories to place him into that. But the reality is he doesn't fit into any of those categories. In creating a new category for an adult who may or may not be mentally retarded, who understood his waiver, who participated in a double homicide, makes no sense. I think there's no basis for any precedent that I know of to create a new category to cover that. Thank you. So in conclusion, then, we're asking this court to affirm the defendant's conviction and sentences. Thank you. Thank you. Rebuttal? Just a few quick points, Your Honors. First, nothing shows that Dante used his knowledge of this double murder as a bargaining chip. There's simply nothing in the record that shows anything beyond him asking, can I tell you something? He doesn't ask. He doesn't wheedle anything. He doesn't try to make some deal out of it. He just gets this off his chest, which is something much more consistent with someone of Dante's mental age, between five and nine, than it is someone craftily using this as some sort of bargaining chip. Second, Dr. Cowardin specifically says that she is doubtful that Dante understood his Miranda rights. She also definitively and repeatedly stated that he is, in fact, mentally retarded. Finally, regarding the misplaced burden, the judge seemed rather on the fence about this, so misplacing the burden could well have tipped the scales when the judge denied the motion to suppress. And regarding the sentencing, Your Honors, none of the cases rejecting challenges to the mandatory natural life sentencing accounts for Graham, and Graham changed the analysis. Graham said that death is no longer difference. It is this court's duty to ensure that what the legislature is prescribing for sentencing squares and complies with Eighth Amendment jurisprudence, accounting for Graham. And also, this case is not that far from Miller, where the Illinois Supreme Court held that a term-of-year sentence for a young man who was guilty by accountability was not inappropriate, even though it was a multiple murder. This case is not that far off. Dante is physically 19, his mental retardation makes him much younger, and he is unquestionably guilty only by accountability. Thank you. I'll just thank you. The matter will be taken under advisement.